KYLE J. KAISER (13924)
DARIN B. GOFF (11355)
RACHEL GEORGE TERRY (10769)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail:  kkaiser@agutah.gov
         dgoff@agutah.gov
         rachelterry@agutah.gov

*Attorneys for University of Utah, Dale Brophy, Kory Newbold, Kayla Dallof, Miguel Deras, Todd Justensen, Heather McCarthy, and Emily Thompson*

---

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JILL McCLUSKEY and MATTHEW McCLUSKEY, individually and for and on behalf of LAUREN McCLUSKEY, deceased,<br><br>                    Plaintiffs,<br><br>v.<br><br>STATE OF UTAH, UNIVERSITY OF UTAH, ET AL.<br>                    Defendants. | **MOTION TO DISMISS**<br><br>Case No. 2:19-cv-00449-HCN<br><br><br>Judge Howard C. Nielson, Jr.<br>Chief Magistrate Judge Paul M. Warner |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

RELIEF SOUGHT AND GROUNDS FOR MOTION ............................................................ 1

INTRODUCTION ................................................................................................................ 3

FACTUAL BACKGROUND ................................................................................................ 5

    Lauren McCluskey's Murder ......................................................................................... 5

    Allegations Concerning University Housing Officials ..................................................... 6

    Allegations Concerning the University Department of Public Safety ............................... 7

LEGAL STANDARD .......................................................................................................... 8

ARGUMENT ...................................................................................................................... 9

    I.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE UNIVERSITY. .............. 10

        A.  The University Is Not a "Person" and Therefore Cannot Be Sued Under § 1983. ..... 10

        B.  The University Cannot Be Sued Under Title IX for Ms. McCluskey's Death Because
            Her Murderer Was Not Faculty, Staff, or a Student Over Whom the University Had
            Substantial Control. ......................................................................................... 12

    II.  UNIVERSITY STAFF MEMBERS ARE ENTITLED TO QUALIFIED IMMUNITY
        FROM THE EQUAL PROTECTION CLAIMS. .......................................................... 19

        A.  Qualified Immunity Standard. .................................................................................. 20

        B.  University Staff Members Did Not Discriminate Against Ms. McCluskey in
            Providing Services. .......................................................................................... 21

            Allegations against Justensen, McCarthy, and Thompson ............................................. 22

            Allegations against Dallof, Newbold, Deras, and Brophy ............................................. 22

        C.  Plaintiffs Fail to State a Claim for Sexual Harassment Under § 1983 Against
            University Staff Members. ................................................................................. 24

        D.  There Is No Clearly Established Constitutional Requirement that a University Protect
            Its Students from Sexual Harassment Perpetrated by Visitors to Campus Who Are
            Not Under University Control. ........................................................................... 26

    III. PLAINTIFFS' § 1983 FAILURE TO TRAIN CLAIM FAILS AGAINST BROPHY ... 28

CONCLUSION ................................................................................................................. 29

# TABLE OF AUTHORITIES

Page(s)

Cases

*Albright v. Rodriguez*, 51 F.3d 1531 (10th Cir. 1995) ................................................................ 20

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ............................................................................ 15

*Ambus v. Utah State Bd. of Educ.*, 858 P.2d 1372 (Utah 1993) ................................................ 11

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2010) ................................................................................. 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 8, 9, 22, 24

*Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998) ............................................................... 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................8, 9

*Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489 (10th Cir. 1990) .................................... 1

*Bond v. Atkinson*, 728 F.3d 690 (7th Cir. 2013) ....................................................................... 21

*C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324 (D. Kan. 2008) ............................................. 18

*Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979).............................................................. 12, 15

*Castle Rock v. Gonzales*, 545 U.S. 748 (2005)...............................................................3, 26, 29

*D.C. v. Wesby*, 138 S. Ct. 577 (2018) ................................................................................20, 21

*Davis Next Friend Lashonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999). 12, 13, 14, 15

*DeShaney v. Winnebago Cty. Dep't. of Soc. Servs.*, 489 U.S. 189 (1989)................................... 3

*Dodds v. Richardson*, 614 F.3d 1185 (2010).............................................................................. 22

*Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507 (7th Cir. 2010) ...15, 16

*Doe v. Blackburn College*, 2012 WL 640046 (C.D. Ill. Feb. 27, 2012) .................................... 16

*Eckert v. Town of Silverthorne*, 25 F. App'x 679 (10th Cir. 2001) ........................................... 21

*Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60 (1992) ......................................................... 12

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) ........................................ 13, 14, 15

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) ....................................................................... 9

*Gomes v. Wood*, 451 F.3d 1122 (10th Cir. 2006) ...................................................................... 20

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)............................................................................. 15

*Goodsell v. Utah*, 2006 WL 1720713 (D. Utah, June 12, 2006) ............................................... 11

*Hall v. Millersville Univ.*, ___ F., 2019 WL 4242515 (E.D. Pa. 2019).................... 14, 15, 16, 17

*Hall v. Witteman*, 584 F.3d 859 (10th Cir. 2009) ....................................................................8, 9

*Harold v University of Colorado Hospital*, 680 Fed.App. 666 (10th Cir. February 23, 2017)...... 1

*Henry v. Storey*, 658 F.3d 1235 (10th Cir. 2011) ..................................................................... 22

*Hewlett v. Utah State Univ.*, 2018 WL 794529 (D. Utah Feb. 8, 2018) ...............................26, 27

*Holland v. Harrington*, 268 F.3d 1179 (10th Cir. 2001).......................................................... 20

*Houston v. Reich*, 932 F.2d 883 (10th Cir. 1991)..................................................................... 28

*Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995)..................................................................10, 25

*Karasek v. Regents of Univ. of California*, 2018 WL 1763289 (N.D. Cal. Apr. 12, 2018)14, 16, 18

*Keith v. Koerner*, 843 F.3d 833 (10th Cir. 2016)..................................................................... 28

*Kojima v. Lehi City*, 2015 WL 4276399 (D. Utah July 14, 2015).............................................. 1

*Leverington v. City of Colo. Springs*, 643 F.3d 719 (10th Cir. 2011)......................................... 8

*Mattingly v. Univ. of Louisville*, 2006 WL 2178032  (W.D. Ky. July 28, 2006) ....................... 16

*Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978) ........................... 11

*Mullenix v. Luna*, 136 S.Ct. 305 (2015) .................................................................................. 20

*Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238 (10th Cir. 1999)............. 14, 24, 25, 26

*Noland v. McAdoo*, 39 F.3d 269 (10th Cir. 1994) .................................................................... 25

*Pearson v. Callahan*, 555 U.S. 223 (2009) ...........................................................20, 21

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) ............................................... 20

*R.L.R. v. Prague Public School Dist. I–103*, 838 F.Supp. 1526 (W.D. Okla. 1993) ............... 1

*Ramser v. Laielli*, 276 F. Supp. 3d 978 (S.D. Cal. 2017) ........................................... 14

*Samuelson v. Oregon State Univ.*, 162 F. Supp. 3d 1123 (D. Or. 2016) ...........................16, 18

*Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052 (D.N.M. 2010) ...................... 25

*Schaefer*, 716 F. Supp ................................................................................ 25

*Seamons v. Snow*, 864 F. Supp. 1111 (D. Utah 1994) ................................................. 1

*Seiwert v. Spencer–Owen Cmnty. Sch. Corp.*, 497 F.Supp. 2d 942 (S.D. Ind. 2007) ................. 1

*Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773 (8th Cir. 2001) .....................................15, 16

*Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007) .....................16, 17, 18

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008) ......................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................. 9

*Tyrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601 (E.D.N.Y. 2011) ..................... 16

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ....................... 21

*Villanueva v. Carere*, 85 F.3d 481 (10th Cir. 1996) ................................................ 21

*Watson v. City of Kansas City*, 857 F.2d 690 (10th Cir. 1988) ..................................... 21

*Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569 (10th Cir. 1996) .................................. 11

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) .........................................1, 11

*Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir. 1992) ...................................25, 26

*Yung-Kai Lu v. Univ. of Utah*, 660 F. App'x 573 (10th Cir. Aug. 16, 2016) .......................... 11

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) .......................................................... 15

Statutes

20 U.S.C. § 1681(a) ................................................................................. 1

20 U.S.C.A. § 1681 .................................................................................. 12

28 U.S.C. § 1961 (a) ................................................................................ 9

42 U.S.C.A. § 1983 ..............................................................................1, 2, 10, 11

Utah Code § 53B-2-101(1) ............................................................................ 1

Rules

18-15841 (9th Cir ................................................................................... 16

DUCiv R 7-1 ......................................................................................... 1

Fed. R. Civ. P. 10(c) ............................................................................... 9

Fed. R. Civ. P. 12(b)(6) .........................................................................1, 8, 9

Regulations

Utah Admin. Code r. 805-4-4(2)(c), r. 765-134-5 (2019) .............................................. 4

Pursuant to Fed. R. Civ. P. 12(b)(6) and DUCiv R 7-1, the University of Utah[1] and Dale

Brophy, Kory Newbold, Kayla Dallof, Miguel Deras, Todd Justensen, Heather McCarthy, and

Emily Thompson (the "University Staff Members") move to dismiss the Complaint[2] filed by

Plaintiffs Jill McCluskey and Matthew McCluskey, individually and on behalf of Lauren

McCluskey.[3]

## RELIEF SOUGHT AND GROUNDS FOR MOTION

In their Complaint, Plaintiffs bring five causes of action: 1) violation of Title IX against

the University; 2) violation of the Equal Protection Clause of the Fourteenth Amendment to the

---

[1] Plaintiffs' caption names the "State of Utah (including the University of Utah, University Department of Housing and Residential Education and University Department of Public Safety)." But because "the State" is not an "education program or activity," 20 U.S.C. § 1681(a), it cannot be a defendant in a Title IX claim. *See, e.g.*, *Seamons v. Snow*, 864 F. Supp. 1111, 1116 (D. Utah 1994), *rev'd in part on other grounds*, 84 F.3d 1226 (10th Cir. 1996). And the State cannot be a defendant to either a Title IX or § 1983 claim. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). The University Department of Housing and Residential Education and the University Department of Public Safety are not entities that can sue or be sued in their own name. *See, e.g.*, *Kojima v. Lehi City*, No. 2:13-cv-000755-EJF, 2015 WL 4276399, at *4 (D. Utah July 14, 2015) (not selected for publication) (analyzing whether various Utah governmental subdivisions may sue and be sued); *see also* Utah Code § 53B-2-101(1) (recognizing that the University of Utah, along with other state colleges and universities, are "bodies politic and corporate with perpetual succession and with all rights, immunities, and franchises necessary to function as such"). Furthermore, Plaintiffs assert allegations against the "University" throughout their Complaint. *See, e.g.*, Compl. ¶¶ 107, 118, 136, 144, 157. Accordingly, Defendants interpret Plaintiffs' Complaint as one against the University and the University Staff Members.
[2] Doc. 2.
[3] Plaintiffs Jill and Matthew McCluskey are not the appropriate parties for claims pursuant to 42 U.S.C.A. § 1983. "Section 1983 remedies are 'to the party injured.'" *Harold v University of Colorado Hospital*, 680 Fed.App. 666, 673 (10th Cir. February 23, 2017) (quoting 42 U.S.C.A. § 1983). Thus, "the estate of a deceased victim must be the one to bring suit." *Id.* (citing *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1506-07 (10th Cir. 1990). Moreover, parents of a student do not have a personal claim under Title IX. *See R.L.R. v. Prague Public School Dist. I–103*, 838 F.Supp. 1526, 1530 (W.D. Okla. 1993). Therefore, any recoverable damages in a Title IX action brought on behalf of a student must be related to deprivation of educational benefits to the student rather than secondary injuries to a parent. *Seiwert v. Spencer–Owen Cmnty. Sch. Corp.*, 497 F.Supp. 2d 942, 954 (S.D. Ind. 2007) ("Because there are no educational opportunities or activities that the parents are excluded from, they have no claim" even when the student is a minor).

U.S. Constitution, actionable under § 1983 against the University Staff Members; 3) violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, actionable under § 1983 against the University; 4) failure to train in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, actionable under § 1983 and; 5) Interest on Money Judgment.

The Court should dismiss Plaintiffs' Third Cause of Action—the § 1983 claim against the University—because the University is not a "person" subject to § 1983 liability and cannot be liable under the *Monell* doctrine.

The Court should dismiss Plaintiffs' First Cause of Action—a Title IX claim against the University—because harassment perpetrated by a non-student, non-employee, with no University affiliation, cannot be the basis of a Title IX claim against the University as the University does not have the "substantial control" of such an individual required for the implied cause of action judicially created under Title IX.

The Court should dismiss Plaintiffs' Second Cause of Action - their equal protection claim against the University Staff Members—because Plaintiffs have failed to assert specific facts supporting their claim that the Staff Members' alleged actions or inactions in this case were related to Ms. McCluskey's gender. In addition, Plaintiffs have failed to allege that the University Staff Members violated Ms. McCluskey's clearly established constitutional rights. Therefore, the University Staff Members are entitled to qualified immunity.

The Court should dismiss Plaintiffs' Fourth Cause of Action—their failure-to-train claim—because they have failed to assert specific facts demonstrating that Brophy's alleged failure to train caused Dallof, Deras, and Newbold to violate Ms. McCluskey's constitutional rights.

Finally, Plaintiffs' claim for interest on money judgment is not an independent claim. It will not be addressed below.

For these reasons, and those set forth below, the Court should dismiss Plaintiffs' Complaint with prejudice.

## INTRODUCTION

Lauren McCluskey was a 21-year-old student and track athlete at the University of Utah. In the fall of 2018, Ms. McCluskey dated Melvin Rowland, a person with no University affiliation whatsoever, whom she met at a bar in downtown Salt Lake City. After dating Rowland for about a month, Ms. McCluskey ended the relationship. Approximately twelve days later, Rowland came on to the University campus and brutally murdered Ms. McCluskey in a campus parking lot. Several hours later, Rowland killed himself.

Plaintiffs have brought this civil lawsuit, not against the actual perpetrator of the violence, but against the University and its Staff Members, alleging that they violated Title IX and Ms. McCluskey's constitutional rights. The claims presented attempt to circumvent United States Supreme Court precedent establishing that the Constitution does not require police departments to protect persons in their jurisdiction from harm,[4] and to circumvent existing case law limiting Title IX liability to situations involving harms committed by university employees or university students under a university's control.

---

[4] *See Castle Rock v. Gonzales*, 545 U.S. 748, 755, 768 (2005) (holding that a plaintiff's due process rights had not been violated when police refused to enforce a restraining order, despite the fact that the plaintiff, a mother, had called the police six times in one night to request police help in searching for her three minor children, and where the restrained party murdered the protected party's children, the Supreme Court held "the benefit a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor its 'substantive' manifestations.") (citing *DeShaney v. Winnebago Cty. Dep't. of Soc. Servs.*, 489 U.S. 189 (1989)) (citations omitted).

Plaintiffs do not state a Title IX claim. In this case, Ms. McCluskey's killer, Rowland, was not a University employee, student, or volunteer. He had no University affiliation whatsoever. He was a bouncer at a downtown bar, on parole, with a criminal record and a history of deception and abuse. Rowland walked onto campus not at the University's invitation, but to harm Ms. McCluskey. Extending liability to educational institutions in situations where they lack substantial control over harassers and criminals like Rowland would constitute an unprecedented and unwarranted expansion of the implied cause of action under Title IX, which would unjustly subject all educational institutions to liability for all acts of dating-related violence occurring on campus, regardless of the parties involved.

Further, the University had no more control over Rowland than it has over any other member of the public at large.[5] The University of Utah campus occupies more than 1,500 acres, with more than 50,000 employees and students, over a million visitors per year, and hundreds of buildings and facilities open to the public. Yet, Plaintiffs' claims, if successful, would subject the University and its individual staff members to liability if they fail to prohibit all potentially dangerous persons from campus. The claim should be dismissed.

Second, Plaintiffs do not state a claim for a violation of Ms. McCluskey's equal protection rights. The University, as an arm of the State of Utah, is not a "person" subject to liability for money damages for constitutional violations. And Plaintiffs' allegations of equal protection violations against the University Staff Members are conclusory and implausible. The University Staff Members did not engage in sexual harassment of Ms. McCluskey, and

---

[5] As a state institution of higher education, the University of Utah provides constitutionally mandated due process when banning a person from the grounds of a public university, a process that requires notice and an opportunity to be heard. UTAH ADMIN. CODE r. 805-4-4(2)(c), r. 765-134-5 (2019).

Plaintiffs' only allegations against them are that they must have taken action (or not taken action) based upon "gender stereotypes" about women and girls who allege sexual violence. Their laundry list of these stereotypes does not meet the requirements for pleading discrimination on the basis of gender.

For these reasons, the University and the University Staff Members request that the case be dismissed.

## FACTUAL BACKGROUND

The following facts, taken from Plaintiffs' Complaint,[6] documents referred to therein, or sources which may be judicially noticed, form the basis of this Motion to Dismiss.

### *Lauren McCluskey's Murder*

In the fall of 2018, Ms. McCluskey was a student at the University and resided in campus housing at the Shoreline apartments.[7] Ms. McCluskey met Rowland and began dating him in early September, although at the time Rowland concealed his true age and identity from her.[8] On October 3 or 4, Ms. McCluskey learned that Rowland had deceived her. She confronted him concerning his false identity.[9] On approximately October 9 or 10, Ms. McCluskey terminated the relationship.[10] Rowland subsequently harassed Ms. McCluskey through text messages and telephone calls, and extorted her to pay him $1,000 with a threat to release "a compromising

---

[6] For purposes of this motion, the well-pleaded allegations set forth in Plaintiffs' Complaint must be treated as true.  It should be noted, however, that the University and the University Staff Members dispute many of the Complaint's allegations.

[7] Compl. ¶¶ 38-39.

[8] *Id.* at ¶¶ 40.

[9] *Id.* at ¶ 64.

[10] *Id.* at ¶¶ 69-70.

image" of Ms. McCluskey.[11] On October 22, Rowland physically confronted Ms. McCluskey on campus, forced her into a car, and shot her to death.[12]

Rowland was neither a student at the University nor an employee.[13] Rowland frequently stayed the night in Ms. McCluskey's dorm room as her guest during their dating relationship.[14] At the time of Ms. McCluskey's murder, however, Rowland had not been Ms. McCluskey's guest in her dorm room for at least twelve days.[15]

### Allegations Concerning University Housing Officials

On September 30, Ms. McCluskey's friend advised the Shoreline apartments Graduate Assistant of concerns they had concerning Ms. McCluskey's relationship with Rowland.[16] The Graduate Assistant then passed this report to University Staff Members Emily Thompson and Heather McCarthy.[17] Thompson and McCarthy asked the Graduate Assistant to "keep an eye" on Ms. McCluskey and to initiate a CARE referral so that the CARE team could discuss the situation reported by Ms. McCluskey's friend at a later date.[18] McCarthy subsequently passed the information she learned from the Graduate Assistant to Todd Justensen.[19] Ms. McCluskey, however, never sought assistance or intervention from campus housing officials.[20]

---

[11] *Id*. at ¶¶ 71, 74,-76, 79, 91. It should be noted that during the time period in question the sources of several texts were believed by Ms. McCluskey to be Rowland's friends, rather than Rowland himself.
[12] *Id.* at ¶ 97.
[13] *Id.* at ¶¶ 53, 82.
[14] *Id.* at ¶¶ 44, 52, 58
[15] *Id*. at ¶¶ 69, 97.
[16] *Id.* at ¶¶ 49-52.
[17] *Id*. at ¶ 53.
[18] *Id.* at ¶¶ 59, 66, 96. The CARE team provided monitoring and support for students having trouble in housing. The CARE meeting was initially scheduled for October 8th, but was ultimately held on October 22nd.
[19] *Id*. at ¶ 62.
[20] *See id.*

*Allegations Concerning the University Department of Public Safety*

On October 10, 2018, Ms. McCluskey's mother called the University Department of Public Safety to request a police escort for Ms. McCluskey to help Ms. McCluskey retrieve her car, which Rowland had offered to return.[21] Campus security arranged and provided the requested security escort.[22]  On or about October 12, Ms. McCluskey spoke with unidentified personnel at University Public Safety and indicated that Rowland was sending her harassing text messages.[23] She contacted University Public Safety again on October 13, and reported that Rowland was extorting her.[24] On October 13, Ms. McCluskey and a friend met with University Public Safety officers, including Deras, and recounted her allegations of harassment, stalking, and extortion to them.[25] The officers suspected that Ms. McCluskey had been the victim of an online scam and solicited a statement concerning the extortion.[26] The officers ran a criminal history check for Rowland and discovered his history of felony convictions, then contacted Dallof who asked them to forward the file and obtain more information.[27] Dallof notified Newbold of the investigation.[28]

On October 19, Ms. McCluskey reported to University Public Safety that Rowland knew about her communication to the police and was continuing to stalk her. Dallof responded that she was out of the office but that she would follow up on October 23.[29] Dallof specifically directed

---

[21] *Id.* at ¶ 74.
[22] *Id.*
[23] *Id.* at ¶¶ 77-78.
[24] *Id.* at ¶ 79.
[25] *Id.* at ¶ 80.
[26] *Id.* at ¶¶ 81, 84.
[27] *Id.* at ¶¶ 83, 84.
[28] *Id.*
[29] *Id.* at ¶ 93.

Ms. McCluskey to forward all communications from Rowland that appeared to be an attempt to "lure her somewhere."[30] Ms. McCluskey then forwarded a screen shot of communication received from Rowland regarding her contacts with the police and information regarding his criminal history and offender details.[31]

On October 22, Ms. McCluskey received a deceptive text message directing her to go to the police station.[32] She spoke with Deras who advised her that the message was fake and directed her not to respond.[33]

## LEGAL STANDARD

The University and the University Staff Members seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the court assumes the truth of well-pleaded facts and draws reasonable inferences in a light most favorable to the plaintiff, *e.g.*, *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011). But a claim survives only if "there is plausibility in the complaint." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of elements, facts "merely consistent" with liability, "labels and conclusions," or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient. *Iqbal*, 556 U.S. at 678; *Leverington*, 643 F.3d at 723 (quoting *Bell Atl. Corp. v.*

---

[30] *Id.*

[31] *Id.*

[32] *Id.* at ¶ 94.

[33] *Id.*

*Twombly*, 550 U.S. 544, 555 (2007)); *Gee v. Pacheco*, 627 F.3d 1178, 1184–85 (10th Cir. 2010)

(citations and quotations omitted); *Hall*, 584 F.3d at 863 (citations and quotations omitted).

In determining the adequacy of a complaint, the court should begin by identifying

allegations that, because they "are no more than conclusions, are not entitled to the assumption

of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations." *Id.* Next, after excluding conclusory

assertions, the court then assumes the veracity of well-pleaded allegations and determines

whether they plausibly give rise to an entitlement to relief. *Id.* Fed. R. Civ. P. 12(b)(6) does not

allow a plaintiff to file a complaint devoid of supporting facts as a vehicle to commence

discovery on the off chance some facts might exist which could support a plausible claim.

*Twombly*, 550 U.S. at 555, 562-63.

In reviewing a motion to dismiss, the Court may rely on the facts as alleged in the

complaint, but may also rely on all documents adopted by reference in the complaint, documents

attached to the complaint, or facts that may be judicially noticed. *See* Fed. R. Civ. P. 10(c);

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

## ARGUMENT

Of Plaintiffs' four asserted legal claims,[34] two—violation of Title IX of the Education

Amendments of 1972 and violation of the Fourteenth Amendment's Equal Protection Clause,

actionable under § 1983 are against the University. The § 1983 claim against the University

should be dismissed because the University is not a "person" subject to § 1983 liability and

---

[34] Plaintiffs' Fifth Cause of Action is for post-judgment "Interest on Money Judgment" (Compl. at 48.) This is not an independent cause of action, but the right to automatic post-judgment interest as a remedy. *See* 28 U.S.C. § 1961 (a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

cannot be held liable under the *Monell* doctrine. The Title IX claim should be dismissed because the University cannot be held liable under Title IX for actions of perpetrators with no connection to the University.

Plaintiffs also seek to hold the University Staff Members liable for alleged violation of Ms. McCluskey's equal protection rights. But Plaintiffs have alleged no facts showing the requisite intentional discrimination on the basis of gender to hold any individual liable for such violations. Nor is there any law clearly establishing liability, and therefore the University Staff Members are entitled to qualified immunity.

Similarly, the failure-to-train claim brought against Brophy fails for Plaintiffs' inability to plead facts showing a constitutional violation. The Court should dismiss all of the claims.

## I.     PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE UNIVERSITY.

### A.  The University Is Not a "Person" and Therefore Cannot Be Sued Under § 1983.

Plaintiffs' equal protection claims against the University must be dismissed, because the University, an "arm" of the State of Utah, is not subject to suit for money damages for constitutional violations under § 1983.

Section 1983 is the statutory vehicle for suing state actors for alleged violations of the Constitution or of federal laws. *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995). It provides the exclusive remedy for violation of federal constitutional rights. *Id.*

Section 1983 provides a remedy at law against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects … any citizen of the United States … to the deprivation of any rights … secured by the Constitution." 42 U.S.C.A. § 1983. In order to be subject to suit under § 1983, an entity must be a "person" as that term has

been defined by the courts. *See Ambus v. Utah State Bd. of Educ.*, 858 P.2d 1372, 1376 (Utah 1993).

The U.S. Supreme Court has interpreted "persons" in § 1983 to exclude states. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 72-74 (1989). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71. Furthermore, governmental entities that are considered arms of the State for Eleventh Amendment purposes are also not "persons" under § 1983. *Id.* at 70. "[I]t is well-settled that the University of Utah is considered an 'arm of the state' …." *Yung-Kai Lu v. Univ. of Utah*, No. 15-4179 660 F. App'x 573, 577 (10th Cir. Aug. 16, 2016) (not selected for publication) (citing *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574–75 (10th Cir. 1996)). Therefore, the University is not a "person" subject to suit under § 1983, and Plaintiffs' § 1983 claim against it must be dismissed.

Plaintiffs allege that the University can be held liable under the doctrine of "municipal liability,"[35] created by the Supreme Court in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). But the Supreme Court in *Monell* explicitly limited the doctrine to "local government units which are not considered part of the State for Eleventh Amendment purposes," *Id.* at 690 n.54, and in *Will*, the Court rejected the application of *Monell* to a state, or to an arm of a state. *Will*, 491 U.S. at 70.

Accordingly, "the State of Utah is not an appropriate party in a lawsuit brought under § 1983, and the claims against it are not viable." *Goodsell v. Utah*, No. 2:06-CV-371 DB, 2006 WL 1720713, at * 1 (D. Utah, June 12, 2006) (not selected for publication). Therefore, Plaintiffs' Third Cause of Action must be dismissed as a matter of law.

---

[35] Compl. at ¶ 40.

**B.**     **The University Cannot Be Sued Under Title IX for Ms. McCluskey's Death Because Her Murderer Was Not Faculty, Staff, or a Student Over Whom the University Had Substantial Control.**

Plaintiffs' claim based on the University's alleged violation of Title IX of the Education Amendments of 1972 should be dismissed because Title IX does not extend to sex-based harassment, assault, and violence committed, as here, by a person who was a stranger to the University and not under the University's control.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C.A. § 1681. Although the law itself does not explicitly grant a private right of action to individuals for violations of its provisions, the U.S. Supreme Court determined that a private right of action impliedly exists in the statute. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709 (1979); *see also Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60 (1992) (allowing suits for money damages under Title IX).

Under the implied private right of action, a student is "subjected to discrimination" for the purposes of Title IX, and can therefore bring a lawsuit for damages against a school, when she is subjected to sex-based harassment or assault perpetrated by a teacher, *Franklin*, 503 U.S. at 76,[36] or by a fellow student over whom the school has control, *Davis Next Friend Lashonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633–34, 643–47 (1999).[37]

---

[36] In *Franklin,* the Court held that a high school may be liable under Title IX when school administrators who knew about a teacher's repeated forcible sexual assault of a high school student, took no action to halt it, and dissuaded the student from initiating criminal charges against the perpetrator. *Franklin*, 503 U.S. at 63.

[37] In *Davis*, the Court held that a school may be liable under Title IX where a fifth grade student was repeatedly groped and sexually harassed over a period of five months by a classmate while

But because "Title IX's express means of enforcement…operates on an assumption of actual notice of officials," a school can only be liable for employee harassment if "an official who at a minimum has authority to address the alleged discrimination…has actual knowledge of the discrimination" and fails to take action, or if the official's response amounts "to *deliberate indifference* to discrimination." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (emphasis added) (holding implied private right of action under Title IX did not extend to circumstances when school had no actual notice and was not deliberately indifferent toward a teacher's sexual harassment of a high school student). This is an "exceedingly high standard," *id.* at 304 (Stevens, J., dissenting), and limits a school's liability.

In *Davis Next Friend LaShonda D.*, the Court held that in "certain, limited circumstances" a school could be liable if it failed to prevent student-on-student sexual harassment. 526 U.S. at 643. However, only when the school "exercises *substantial control* over *both the harasser and the context* in which the known harassment occurs" can it be liable for violating Title IX. *Id.* at 645 (emphasis added). The *Davis* court reasoned that if the harasser is a student at the school, *and* "the bulk of" the misconduct takes place during school hours and on school grounds, then "the harasser is under the school's disciplinary authority" and thus the school actually has the ability to stop the abuse. *Id.* at 647. But if the school does not have "control over the harasser" *and* "authority to take remedial action" against the abuser, then it cannot be liable under Title IX. *Id.*

Even in cases of student-against-student harassment, the facts must show a sufficient level of control over the harasser for courts to find Title IX liability. *Davis*, 526 U.S. 644, 647;

---

under the supervision of a classroom teacher, and neither the teacher nor the principal attempted to stop the student-on-student harassment after the student, other students, and parents brought the harassment to school officials' attention. *Davis*, 526 U.S. at 633.

*Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999) (concluding that principal had sufficient control over special education student harassing another student). "[I]nstitutions are [not] responsible for the conduct of a third-party whose relationship with the injured student predates or is otherwise unconnected to the school." *Hall v. Millersville Univ.*, ___ F. Supp. 3d. ___, 2019 WL 4242515, at * 24 (E.D. Pa. 2019). When the harassment is perpetrated by a "guest [invited] into a dorm room on campus over a weekend," a university does not have "sufficient control" over the conduct to subject it to Title IX liability. *Ramser v. Laielli*, 276 F. Supp. 3d 978, 987, n.4 (S.D. Cal. 2017), *reconsideration denied*, No. 15-CV-2018-CAB-DHB, 2017 WL 3524879 (S.D. Cal. Aug. 15, 2017), and *aff'd sub nom. Ramser v. Univ. of San Diego*, No. 17-56342, 2019 WL 2950095 (9th Cir. July 9, 2019); *accord Hall*, 2019 WL 4242515 at *29 (concluding that a university was not subject to Title IX liability for failing to prevent the murder of one of its students, in her dorm room, by her "guest" with no connection to the university); *Karasek v. Regents of Univ. of California*, No. 3:15-CV-03717-WHO, 2018 WL 1763289, at *12 (N.D. Cal. Apr. 12, 2018) (noting that presence on campus of an "independent third party [harasser] with no official relationship to [the university]" is not enough to expose a university to Title IX liability).

"[N]o caselaw supports extending Title IX liability to cover harassment at the hands of a student's own guest …." *Hall*,___ F. Supp. 3d at ___, , 2019 WL 4242515 at *1 This is because Congress did not intend Title IX to have such an expansive reach.

As recognized above, courts should be hesitant to expand the implied right of action under Title IX beyond well-settled law. In *Gebser*, the Supreme Court declined to extend the implied right of action when there is no actual notice of discrimination, noting that "[a]dopting petitioners' position would amount, then, to allowing unlimited recovery of damages under Title

14

IX where Congress has not spoken on the subject of either the right or the remedy….." *Gebser*, 524 U.S. at 286. More broadly, Supreme Court case law exemplifies a trend to limit currently implied private causes of action or refuse to create new ones when Congress fails to provide them explicitly.[38] And courts of appeals have specifically refused to expand Title IX liability beyond the explicit metes and bounds already articulated by the Supreme Court.[39]

Expanding institutional liability under Title IX to apply to this case would ignore the legislative intent of the statute[40] and would wrongly expand the implied cause of action beyond the "limited circumstances" recognized by the Supreme Court. *Davis*, 526 U.S. at 643. It would create a surprise condition on the acceptance of federal funding not contemplated by the thousands of schools which receive federal dollars annually. *See Davis*, 526 U.S. at 655 (Kennedy, J., dissenting). It would require that schools be guardians of every student's safety from any act of relationship violence, no matter where the act arises or who perpetrates it.

---

[38] *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (holding that if the text and structure of a statute does not evidence intent for a cause of action, "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute"); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) (refusing to create a private right of action to enforce the Family Educational Rights and Privacy Act (FERPA)); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165 (2008) (acknowledging the private right of action implied under Section 10(b) of the Securities Exchange Act of 1934, but noting "[c]oncerns with the judicial creation of a private cause of action caution against its expansion" and refusing to extend the implied right of action "beyond its present boundaries"); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (noting that expanding an implied cause of action into any new context is a disfavored judicial activity).

[39] *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 513 (7th Cir. 2010) (refusing to expand Title IX liability to a school district for sexual harassment perpetrated by a *former* employee of the district occurring after the employee got a job in another school district); *accord Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 781–83 (8th Cir. 2001); *Hall*, ___ F. Supp. 3d at ___, 2019 WL 4242515 at * 24..

[40] *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 & n.36 (1979) (recognizing the two "related, but nevertheless somewhat different" legislative goals of Title IX – "to avoid the use of federal resources to support discriminatory practice" and to "provide women with solid legal protection as they seek education and training for later careers") (quoting 110 Cong. Rec. 1594 (1964) (statement of Rep. Lindsay)).

As seen in the following cases, courts throughout the country have regularly dismissed

Title IX claims where the alleged harasser is a third party with no connection to the school:

- When brought against the school where a teacher worked and was investigated for abuse but left and sexually assaulted students at another school. *Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 512 (7th Cir. 2010); *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001);

- When a sexual assault by a non-student occurred during a school-sponsored, study abroad program because "[the attacker] was not subject to the university's rules or disciplinary procedures; and therefore, unlike the university's own students… could not be disciplined by [the school] in any way." *Mattingly v. Univ. of Louisville*, No. CIVA 3:05CV393 H, 2006 WL 2178032, at *4  (W.D. Ky. July 28, 2006) (not selected for publication).

- When the perpetrator was a non-student and the assault occurred during off-campus parties or encounters. *Samuelson v. Oregon State Univ.*, 162 F. Supp. 3d 1123, 1132 (D. Or. 2016), *aff'd on other grounds*, 725 F. App'x 598 (9th Cir. 2018); *Tyrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 608, 629 (E.D.N.Y. 2011);

- When an anonymous perpetrator (whose affiliation with the school was unknown) committed an act of sexual assault *on campus*. *Doe v. Blackburn College*, No. 06-3205, 2012 WL 640046, at *12 (C.D. Ill. Feb. 27, 2012) (not selected for publication);

- When the assailant, the victim's boyfriend, murdered a freshman student in her campus dorm, even though the court held that there was evidence that the university had actual knowledge of prior intimate partner violence. *Hall*, ___ F. Supp. at ___, 2019 WL 4242515, at * 24.

Even when the harasser is an invited guest of a member of the university, courts have

declined to find sufficient control to impose liability. *See Karasek*, No. 3:15-CV-03717-WHO,

2018 WL 1763289, at *13 (granting the school's motion for summary judgment), *appeal filed*

No. 18-15841 (9th Cir. May 9, 2018). In *Karasek*, the assailant was a "guest lecturer" who was

invited to campus by an "instructor of record" but was not supervised by, controlled by, or even

vetted by, the university. *But see Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170,1177

(10th Cir. 2007) (finding that the university was responsible for creating the opportunity for

harassment by its invited guests).

16

Although the *Simpson* Court found liability stemming from the school's invited guests, that case has no application here. In *Simpson*, the Court held that the school could be liable for the sexual harassment and assaults inflicted on its female "student ambassadors" at private parties. The school had instructed the female ambassadors to show its football players and high school recruits—invited by the school to visit—a "good time." *Id.* at 1173. From previous reports, the school knew of the risk of sexual harassment and assault, but instead of implementing training or oversight to ensure the risk was minimized, the football coaches "responded in ways that were more likely to encourage than eliminate such misconduct." *Id.* at 1173 (emphasis added).

This case is no *Simpson*. First, the recruits in *Simpson* were participating in a campus program as guests of the school. The school "brought [them] to campus" and had a "critical role in connecting" the assailants with the victims. *Cf. Hall*, ___ F. Supp. 3d at ___, 2019 WL 4242515 at * 24. The University of Utah had no such role in the present case.

Furthermore, Title IX liability in *Simpson* was premised on the facts that the school's program itself "intentionally violates" Title IX through a specific program which contains an "element of encouragement of the misconduct" by the school. *Simpson*, 500 F.3d at 1176, 1177. "CU sanctioned, supported, even funded a program (showing recruits a 'good time') that, without proper control, would encourage young men to engage in opprobrious acts." *Id.* at 1177. Those allegations were sufficient to demonstrate that the school "intentionally acted in clear violation of Title IX" through this program. *Id.* at 1178 (citations and quotations omitted). Rowland's presence on campus in this case had no relation to any "specific program" of the

University, and the University did not encourage Rowland's conduct. Plaintiffs' claims cannot survive based on *Simpson*.[41]

In this case, it is undisputed that Ms. McCluskey was killed by a man who was a stranger to the University—he was neither an employee nor a student, and had no other affiliation with the University. Rowland's only tie to campus was through his month-long relationship with Ms. McCluskey, who invited Rowland to visit her dorm room. Such a loose, informal, and episodic presence on campus by Rowland did not give the University disciplinary authority over Rowland. Plaintiffs can cite to no cases similar to this one where a court has found an institution liable under Title IX. The fact that "[t]he Supreme Court has not expressly extended a [school's] liability to cover a student's harassment by an independent third-party," *Karasek,* 2018 WL 1763289 at *8, is enough to "ultimately doom[]" Plaintiff's Title IX claim. *Id.*

For the foregoing reasons, the Court should dismiss Plaintiffs' First Cause of Action for Title IX liability and monetary damages.

---

[41] Lower courts have recognized that *Simpson* cannot be read to extend Title IX liability to attacks by persons unrelated to the school. "Simpson did not eliminate the requirement that the recipient have at least a modicum of control of the harasser and the context of the harassment in Title IX official policy claims." *Samuelson v. Ore. State Univ*, 162 F. Supp. 3d 1123, 1133 (D. Ore. 2016) (refusing to hold school liable for sexual assault of student perpetrated by cousin of university student, even though a nearly identical assault had been reported to the school years before). "The deliberate-indifference-to-obvious-need-for-training standard adopted by the Tenth Circuit in *Simpson* for Title IX claims is confined to circumstances where a federal funding recipient sanctions a specific program that, without proper control, would encourage sexual harassment and abuse such that the need for training or guidance is obvious." *C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1339–40 (D. Kan. 2008).

18

## II.    UNIVERSITY STAFF MEMBERS ARE ENTITLED TO QUALIFIED IMMUNITY FROM THE EQUAL PROTECTION CLAIMS.

Plaintiffs' Second Cause of Action alleges the University Staff Members violated Ms. McCluskey's equal protection rights under the Fourteenth Amendment by failing to adequately respond "to reports of stalking, abuse, intimidation, domestic violence, dating violence, sexual harassment and gender-based discrimination against Ms. McCluskey" by Rowland.[42] Plaintiffs allege without factual support that the inadequate response was based on Ms. McCluskey's gender and that the University Staff Members based their decisions "on irrational gender stereotypes."[43]

The University Staff Members played different roles in this case. Brophy, Newbold, Dallof and Deras were police officers. Justensen, McCarthy, and Thompson worked for the University's Department of Housing. While unclear, Plaintiffs' Complaint appears to assert two theories of liability for violation of equal protection rights: denial of services by police on the basis of sex; and supervisory liability for sexual harassment by a third party. Each theory is analyzed below. The University Staff Members are entitled to qualified immunity under each of those theories because Plaintiffs have failed to allege sufficient facts to demonstrate the University Staff Members intentionally discriminated against Ms. McCluskey based on her membership in a protected class or that they participated or acquiesced in Rowland's misconduct. In addition, Plaintiffs cannot show that the University Staff Members violated a clearly established right.

---

[42] Compl. ¶ 120.
[43] *Id*. ¶ 123.

A. **Qualified Immunity Standard.**

As employees of the state, the University Staff Members are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation and quotation marks omitted). Once a defendant raises qualified immunity, the plaintiff bears the heavy burden of proving (1) that the facts alleged make out a violation of a constitutional right, and (2) that a reasonable government official would have known they were violating such a constitutional right. *Id.* at 232. "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

The Supreme Court has repeatedly explained that courts should not "define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2010)). Instead, the inquiry focuses on the established nature of the "particular conduct," with a "high degree of specificity." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (marks and citations omitted). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). The inquiry is "whether the law put officials on fair notice that the described conduct was unconstitutional." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). "Officials who are mistaken about the lawfulness of their conduct may still be entitled to qualified immunity if the mistake is reasonable in light of the applicable law and the facts known to them at the time." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006). "The principles of qualified immunity

shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244. The precedent establishing that the defendant's actions violated the Constitution must be "settled law." *Wesby*, 138 S. Ct. at 589.

### B. University Staff Members Did Not Discriminate Against Ms. McCluskey in Providing Services.

Plaintiffs allege that the University Staff Members failed to protect Ms. McCluskey from Rowland and that they failed to do so because of gender stereotypes. Their allegations are insufficient to state a claim under the Equal Protection Clause.

A plaintiff in an equal protection action has the burden of demonstrating that a state actor intentionally discriminated against her because of her membership in a protected class. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265-66 (1977). There is no general constitutional right to police protection, but the state may not discriminate in providing such protection. *Watson v. City of Kansas City,* 857 F.2d 690, 694 (10th Cir. 1988); *Eckert v. Town of Silverthorne*, 25 F. App'x 679, 684 (10th Cir. 2001)(unpublished). An equal protection claim arising out of an alleged failure to provide police protection is viable against individual officers only where the plaintiff demonstrates: (1) that she is a member of a protected class; (2) that she was treated differently from similarly situated individuals who were not members of the protected class; and (3) that the officers' failure to provide police protection was motivated, at least in part, by a discriminatory purpose. *Watson,* 857 F.2d at 694; *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must [show] that they were treated differently from others who were similarly situated to them."); *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996) (stating that it is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; but it is necessary to prove that a discriminatory purpose was a motivating factor); *Bond v. Atkinson*, 728

F.3d 690, 692-693 (7th Cir. 2013) ("To obtain relief, a plaintiff must show intentional discrimination—that the defendants wanted men (but not women) left at large to injure their domestic partners.").

Section 1983 liability may only be "imposed upon those defendants whose own individual actions cause a constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1200 (2010) (citing *Iqbal*, 556 U.S. at 677); *see also Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) (because "§ 1983 imposes liability for a defendant's own actions[,] personal participation in the specific constitutional violation complained of is essential"). Thus, Plaintiffs must show that each of the individual University Staff Members violated Ms. McCluskey's rights.

Here, there are no allegations that any of the University Staff Members intended to discriminate against Ms. McCluskey based on her gender. In fact, the Complaint contains only a handful of allegations specific to each of the University Staff Members, none of which state a constitutional claim. The relevant allegations against each University Staff Member are discussed in turn below.

### *Allegations against Justensen, McCarthy, and Thompson*

Justensen, McCarthy, and Thompson were not police officers and Plaintiffs do not allege they had a duty or any ability to exercise control over Rowland or take any specific protective action against him. Therefore, to the extent Plaintiffs are asserting a claim for denial of police services against them, that claim fails.

### *Allegations against Dallof, Newbold, Deras, and Brophy*

The Complaint alleges that Dallof was assigned Ms. McCluskey's file.[44] Ms. McCluskey provided Dallof information that she was being threatened and blackmailed, forwarded messages

---

[44] *Id.* ¶¶ 27, 84.

purportedly sent by Rowland's friends, and sent information regarding Rowland's criminal history and offender status.[45] As Plaintiffs acknowledge, Dallof was actively investigating Ms. McCluskey's complaints against Rowland.[46]

The only factual allegation against Newbold is that Dallof told him about the extortion investigation, and that he had knowledge of the stalking and abuse against Ms. McCluskey.[47]

The Complaint alleges that Ms. McCluskey reported concerns about Rowland to Deras, who suggested Ms. McCluskey was the victim of an online scam, and forwarded the file to Dallof.[48] The Complaint alleges that Deras encouraged Ms. McCluskey to leave information about stalking and dating violence out of the statement.[49] Later, Ms. McCluskey shared text messages with Deras that appeared to be from another officer and Deras informed her those messages were fake and told her not to respond.[50]

Plaintiffs make no allegations to demonstrate that Brophy had any direct knowledge of Ms. McCluskey or Rowland.

Plaintiffs' equal protection claim fails because they have not alleged any facts demonstrating that any individual University Staff Member intentionally discriminated against Ms. McCluskey on the basis of sex in providing police services. The Complaint contains numerous conclusory statements that the University Staff Members failed to act because of "irrational gender stereotypes,"[51] but does not provide any factual support for those statements. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[45] *Id.* ¶¶ 84, 93.
[46] *Id.* ¶¶ 84, 93-95.
[47] *Id.* ¶¶ 84, 112.
[48] *Id.* ¶¶ 80, 84.
[49] *Id.* ¶ 84.
[50] *Id.* ¶ 94.
[51] *Id.* ¶ 19, 101.

statements, do not suffice." *Iqbal*, 556 U.S. at 678. Therefore, those statements are insufficient to state a claim for gender-based discrimination.

Plaintiffs also do not allege that any University Staff Member protected men from domestic violence while failing to protect women. Nor have they alleged that Ms. McCluskey was treated differently from other similarly situated students, male or female, in cases of dating violence, stalking or harassment. Plaintiffs' failure to plausibly allege disparate treatment or a discriminatory motive is fatal to their equal protection claim against the University Staff Members. And more specifically to Justensen, McCarthy, and Thompson, Plaintiffs have failed to allege how housing employees could have denied Ms. McCluskey police services, let alone denied services with a discriminatory purpose. For these reasons, Plaintiffs have failed to state a claim for a violation of equal protection under § 1983 and the Fourteenth Amendment and the University Staff Members are entitled to qualified immunity.

### C. Plaintiffs Fail to State a Claim for Sexual Harassment Under § 1983 Against University Staff Members.

While a state actor can only be liable for her own conduct, under some limited circumstances, sexual harassment by a third party can subject an official at an education institution to liability for violation of the equal protection clause. *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1250-51 (10th Cir. 1999). A state actor may be held liable for the sexual harassment of a student under § 1983 only if the plaintiff can show "deliberate indifference to known sexual harassment." *Id.* Conduct by a state actor is required to support a claim under § 1983. *Id.* (citing *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994)). Thus, where the primary conduct is by a third party, liability only exists when a state actor "participated in or consciously acquiesce[ed]" in the sexual harassment. *Id.*

Even if § 1983 liability were extended to the conduct of a third-party stranger to the University, Plaintiffs would need to show that each of the University Staff Members "actually knew of and acquiesced" in Rowland's behavior. *Id.* (citing *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995). To prove "actual knowledge," Plaintiffs must show each individual "received notice of a pattern of violations." *Jojola*, 55 F.3d at 490.

"[L]iability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant" and not upon mere negligence. *Murrell,* 186 F.3d at 1250 (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992); *see also Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1078 (D.N.M. 2010). "[T]he question is not what the Defendants could have done better, but whether they were deliberately indifferent or knew of and acquiesced in the wrongful conduct." *Schaefer*, 716 F. Supp at 1078.

Here, Justensen, McCarthy, and Thompson worked for the University's Housing and Residential Education Department. Plaintiffs allege these individuals had notice that Ms. McCluskey's friend had reported that Ms. McCluskey was in an unhealthy and potentially harmful relationship with Rowland, that Ms. McCluskey had not been taking care of herself, and that she had bruises on her body.[52] The Complaint alleges that Justensen, McCarthy, and Thompson did not take any action following the report other than to ask the Graduate Assistant to "keep an eye" on Ms. McCluskey and to plan to discuss Ms. McCluskey at a CARE meeting.[53] These allegations do not even approach participation or acquiescence in the misconduct of Rowland, an individual over whom Justensen, McCarthy, and Thompson had no control or authority.

---

[52] *Id.* ¶ 49.
[53] *Id.* ¶¶ 59, 63.

As to Brophy, Dallof, Newbold, Deras, there is no liability in this context because they were police officers. *See Castle Rock v. Gonzales*, 545 U.S. 748, 755, 768 (2005). The constitution does not require police departments to protect persons in their jurisdiction from harm. *Id.* Imposing liability on police officers who learn of sexual harassment and do not respond would circumvent the principles established in *Castle Rock.*

Plaintiffs have therefore failed to state a claim for sexual harassment under § 1983, and University Staff Members are entitled to qualified immunity.

**D.      There Is No Clearly Established Constitutional Requirement that a University Protect Its Students from Sexual Harassment Perpetrated by Visitors to Campus Who Are Not Under University Control.**

This case presents the question of whether university employees may be held liable for violation of equal protection under § 1983 and the Fourteenth Amendment when a stranger to the educational entity harasses then murders a student. While there is a generally recognized equal protection claim for sexual harassment, *Woodward v. City of Worland*, 977 F.2d 1392, 1397–98 (10th Cir. 1992), and for a school administrator's deliberate indifference to student-on-student sexual harassment, *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1250 (10th Cir. 1999), "no clear law has been established sufficient to impose Section 1983 liability against a state actor for underreacting to a known potential threat of sexual harassment or assault by a third party acting outside of the mantle of state position and authority." *Hewlett v. Utah State Univ.*, 2018 WL 794529, *4 (D. Utah Feb. 8, 2018) (unpublished) (emphasis added).

In a recent Utah case, the plaintiff was sexually assaulted by a fellow student at an off-campus fraternity party near Utah State University. *Hewlett v. Utah State Univ.*, 2018 WL 794529 *1 (D. Utah Feb. 8, 2018) (unpublished). Plaintiff alleged university officials violated her constitutional rights because they had been aware that the offending student had previously

26

sexually assaulted several other students and yet failed to remove him from the campus community. *Id.* at *3–4. In granting qualified immunity, the court held that the individual defendants "did not violate a clearly established law by *underreacting* to a *potential* threat of sexual assault or harassment." *Id.* at *4–5.[54]

Plaintiffs' Complaint does not present a case for clearly established liability. As in *Hewlett*, Plaintiffs have not and cannot allege facts showing that any University Staff Member had either an awareness of a pattern of violations by Rowland or acted with deliberate indifference to Rowland's harassment of Ms. McCluskey. None of the University Staff Members had sufficient information, or the ability in most cases, to prevent Rowland's contact with Ms. McCluskey. Ms. McCluskey did not report Rowland to Justensen, McCarthy, or Thompson or ask that he be barred from housing or the campus. When Ms. McCluskey reported Rowland to the University Public Safety, an investigation was started, including running a criminal history check on Rowland. Rowland murdered Ms. McCluskey shortly after the investigation began.

Unlike the perpetrators in *Hewlett* and *Murrell*, Rowland was a stranger to the University and not under the University's control. No cases to date have found liability under § 1983 when a stranger to the educational entity harasses, then murders a student. Further, the University Staff Members are aware of no cases which impose Section 1983 liability against a police officer for action or inaction related to student-on-student sexual harassment, and even more critically, no cases which impose liability against a police officer for action or inaction related to sexual harassment of a student by a stranger to the institution. The University Staff Members did not

---

[54] In finding that the law was not clearly established, the court distinguished *Murrell* on two grounds: 1) the facts alleged by Murrell that school personnel stood by with knowledge, while Murrell's daughter was the victim of repeated sexual harassment on school premises by another student who "was a known risk generally and specifically" to the victim; and 2) a greater level of control exists over secondary students than university students).

have fair warning that their limited awareness of Rowland during the three-week period in this case could give rise to a claim for sexual harassment under the Equal Protection Clause of the Fourteenth Amendment. Therefore, the claims against all University Staff Members should be dismissed.

## III.    PLAINTIFFS' § 1983 FAILURE TO TRAIN CLAIM FAILS AGAINST BROPHY.

Plaintiffs' Fourth Cause of Action alleges that Brophy failed to properly and sufficiently train his officers with regard to "stalking, abuse, intimidation, domestic violence, dating violence [and] . . . obligations under Title IX,"[55] among other things, thereby denying Ms. McCluskey her clearly established federal and Constitutional rights.[56]

A supervising official may only be liable for failure to train under § 1983 "[w]here there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016) (citing *Houston v. Reich*, 932 F.2d 883, 888 (10th Cir. 1991)). It is not enough to allege "general deficiencies"; a plaintiff "must prove that the deficiency in training actually caused" the constitutional violation. *Id.*

Here, Plaintiffs have failed to assert specific facts demonstrating that Brophy's alleged failure to train caused Dallof, Deras or Newbold to violate Ms. McCluskey's constitutional rights. Indeed, as established above, Dallof, Deras and Newbold did not violate any clearly established constitutional rights with respect to Ms. McCluskey. Under these circumstances, the Court should dismiss Plaintiffs' Fourth Cause of Action.

---

[55] Compl. ¶ 149.
[56] Compl. ¶ 154.

**CONCLUSION**

A terrible tragedy, no matter how heartbreaking, does not necessarily compel legal liability. The Supreme Court has recognized this even in the most horrific of cases, noting that "[t]his result reflects our continuing reluctance to treat the Fourteenth Amendment as 'a font of tort law.'"  *See Castle Rock*, 545 U.S. at 768 (internal citations omitted). For the reasons stated above, this Court should dismiss Plaintiffs' Complaint in its entirety.

Dated this 20th day of September 2019.

**OFFICE OF THE UTAH ATTORNEY GENERAL**

/s/Rachel George Terry
RACHEL GEORGE TERRY
KYLE J. KAISER
DARIN B. GOFF
Assistant Utah Attorneys General
*Attorneys for Defendants University of Utah, Dale Brophy,*
*Kory Newbold, Kayla Dallof, Miguel Deras, Todd Justensen,*
*Heather McCarthy, and Emily Thompson*